# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**JOHNNY MCKINNEY,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0137** (BOR Appeal No. 2054511)
(Claim No. 2018010643)

**KINGSTON MINING, INC.,**
**Employer Below, Respondent**

**FILED**
**May 20, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Johnny McKinney, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Kingston Mining, Inc., by Counsel Sean Harter, filed a timely response.

The issues on appeal are additional compensable conditions and temporary total disability benefits. The claims administrator granted temporary total disability benefits from November 2, 2017, through January 10, 2018, in a May 23, 2018, decision. On July 9, 2018, the claims administrator denied the addition of right knee osteoarthritis and right knee medial meniscus tear to the claim. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its August 15, 2019, Order. The Order was affirmed by the Board of Review on January 24, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W.Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

1

. . . .

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. West Virginia Off. of Ins. Comm'r,* 235 W. Va. 577, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. West Virginia Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. McKinney, a mine foreman, injured his right knee as he was stepping across a railroad track while carrying a heavy tarp on November 1, 2017. Mr. McKinney was transported via ambulance to Raleigh General Hospital where it was noted that he injured his knee due to a misstep. Mr. McKinney was diagnosed with left knee pain. A right knee x-ray showed loss of joint space in the medial compartment, ossified posterior patella, and no fracture or dislocation. The Employees' and Physicians' Report of Injury was completed that day and indicated Mr. McKinney injured his right knee when it popped out while he was walking. The physician's section listed the diagnosis as right knee sprain.

Mr. McKinney treated with his primary care physician, Paul Oar, M.D., on November 2, 2017. Dr. Oar noted that there was no history of trauma. At the time of examination, Mr. McKinney's knee was swollen and tender. Dr. Oar referred him to Brett Whitfield, M.D, an orthopedic surgeon. Dr. Oar also noted that Mr. McKinney would not be able to work through November 17, 2017.

Dr. Whitfield treated Mr. McKinney on November 9, 2017. Dr. Whitfield noted that Mr. McKinney injured his right knee "while carrying a roll of curtain when he stepped over a railing and his right knee buckled and gave out. He had no previous pain in his right knee of any extent. He had an injury to his right knee in high school but had no problems since then." Dr. Whitfield found mild effusion and pain with flexion during the examination. Dr. Whitfield described x-rays taken on the date of injury demonstrating arthritic changes of the patellofemoral joint with osteophytes about the super and inferior pole of the patella. The x-rays also showed degenerative changes of the lateral and medial compartment with small osteophytes. Dr. Whitfield diagnosed Mr. McKinney with internal derangement of the right knee, and he suspected medial and lateral meniscal tears. Dr. Whitfield also diagnosed pre-existing arthritic changes of the right knee with exacerbation. Dr. Whitfield requested an MRI in order to evaluate the meniscal tearing.

2

On November 29, 2017, Dr. Oar stated that Mr. McKinney would be disabled until February 1, 2017. Dr. Oar noted that he was unable to walk and that his left knee had pain. Mr. McKinney underwent a right knee MRI on December 5, 2017, which revealed a complete posterior root tear of the medial meniscus, mild patellar tendinosis, moderate cartilage abnormalities in the patellofemoral and medial femorotibial compartment, and tricompartmental osteophytosis. Mr. McKinney returned to Dr. Whitfield on December 21, 2017. Dr. Whitfield reviewed the MRI and opined that Mr. McKinney had traumatic right knee medial meniscus tears and moderate degenerative changes of the right knee patellofemoral and medial compartments. Dr. Whitfield discussed several options to repair the meniscus tears and treatment for the degenerative changes. Treatment included arthroscopic surgery and injections with cortisone.

Dr. Oar completed an Attending Physician's Report on January 3, 2018, and stated that Mr. McKinney would be disabled through November 1, 2018. Mr. McKinney underwent right knee surgery on January 10, 2018. The surgery was described as an arthroscopic debridement of a degenerative tear of the posterior horn and medial meniscus at the root attachment; debridement of small lateral meniscus tear of the posterior horn; and an arthroscopic chondroplasty of the trochlear groove, medial tibial plateau, and medial femoral condyle with removal of intra-articular loose bodies. Dr. Whitfield, who conducted the surgery, found a right knee degenerative tear, small tear of the lateral meniscus, 50% cartilage thickness loss, and multiple cartilaginous bodies of the right knee.

January 25, 2018, progress notes, two weeks post-surgery, from Dr. Whitfield indicate that Mr. McKinney's pain was improved but still present. He also noted that Mr. McKinney had significant arthritis in his right knee in addition to meniscus tears. A knee brace was prescribed to prevent the right knee from giving way and to provide support. Dr. Whitfield noted that Mr. McKinney may need a knee replacement in the future to help with his arthritis.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on February 1, 2018, in which he diagnosed internal derangement of the right knee, status post arthroscopic surgery and osteoarthritis. He was of the opinion that Mr. McKinney's right knee impairment was not causally related to his employment. Dr. Mukkamala stated that there was no objective evidence that the internal derangement happened on or around November 1, 2017. On February 6, 2018, Dr. Oar stated that Mr. McKinney was unable to return to work until March 15, 2018, due to his right knee surgery.

In a February 22, 2018, treatment note, Dr. Whitfield stated that Mr. McKinney's right knee swelling was reduced but he still had pain. Dr. Whitfield noted that Mr. McKinney had Grade IV chondromalacia, Grade III chondral changes in the medial tibial plateau, and 3% cartilage thickness loss in the medial femoral condyle. Dr. Whitfield told Mr. McKinney that the sensation of his knee giving way was likely due to the Grade IV chondromalacia. He discussed arthritis treatment options. On February 22, 2018, Dr. Oar noted that Mr. McKinney was unable to return to work until April 15, 2018, due to right knee pain.

Mr. McKinney testified at an expedited hearing on March 9, 2018, that at the time of his injury he was carrying a curtain roll that was approximately thirty-five to fifty pounds. When his

knee gave-way, he felt excruciating pain and his knee popped out sideways. He used a rail car to break his fall. Mr. McKinney stated that he was able to pop his knee back into place. He denied any right knee symptoms prior to the alleged compensable injury. Mr. McKinney admitted that he injured his knee in high school but stated that the injury required only one trip to the emergency room for treatment. Mr. McKinney returned to Dr. Oar on March 16, 2018, and reported that he was unable to bear weight. Mr. McKinney was expected to return to work on May 15, 2018.

On April 5, 2018, the Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable for right knee sprain. Although Mr. McKinney was found to have significant preexisting degenerative changes in the right knee prior to the injury, the Office of Judges found that he established that it was more likely than not that he sustained a compensable injury on November 1, 2017. The decision was affirmed by the Board of Review on August 17, 2018, and by this Court on February 13, 2020.[1]

Dr. Oar opined on April 27, 2018, that Mr. McKinney was unable to return to work until June 15, 2018, due to right knee pain. On May 22, 2018, Dr. Whitfield administered a Monovisc injection for right knee pain. The claims administrator granted temporary total disability benefits from November 2, 2017, through January 10, 2018, in its May 23, 2018, decision. The claims administrator stated that the medical evidence indicates Mr. McKinney's disability beyond January 10, 2018, is the result of severe preexisting arthritis, not the compensable injury. Dr. Whitfield requested the addition of right medial meniscus tear and right knee osteoarthritis to the claim on June 19, 2018. An explanation was not provided. On July 9, 2018, the claims administrator denied the addition of right knee osteoarthritis and right knee medial meniscus tear to the claim.

Marsha Bailey, M.D., performed an independent medical evaluation on August 13, 2018, in which she diagnosed chronic right knee pain due to noncompensable, preexisting degenerative joint disease and osteoarthritis. Dr. Bailey opined that it was reasonable to assume Mr. McKinney sustained a right knee sprain/strain as a result of his work injury. The injury had long since resolved and was not the cause of Mr. McKinney's ongoing symptoms. Dr. Bailey stated that Dr. Whitfield noted evidence of arthritic changes and small osteophytes the day of the work-related injury. Dr. Bailey opined that Dr. Whitfield's surgical notes indicate a degenerative medial meniscus tear, total cartilage loss at the trochlea groove, and 50% cartilage loss in the medial tibial plateau. Dr. Bailey found that Mr. McKinney had reached maximum medical improvement. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), she assessed 0% right knee impairment.

Bruce Guberman, M.D., performed an independent medical evaluation on November 9, 2018, in which he found right knee reduced range of motion and weakness. Dr. Guberman's assessment was history of work-related right knee sprain which aggravated preexisting dormant degenerative right knee disease with medial and lateral meniscus tears. Dr. Guberman opined that the partial medial and lateral meniscectomy was necessary solely due to the compensable injury.

---

[1] *See McKinney v. Kingston Mining, Inc.,* No. 18-0788, 2020 WL 738444 (W. Va. Feb. 13, 2020) (memorandum decision)

4

In a November 30, 2018, letter, Dr. Whitfield stated that he performed right knee surgery to treat medial and lateral meniscus tears. A complex medial meniscus tear and a minor lateral meniscus tear were found during surgery. Mr. McKinney did well initially but symptoms reoccurred. Dr. Whitfield opined that he required a total right knee replacement. Dr. Whitfield further opined that Mr. McKinney sustained traumatic tears of the medial lateral menisci as a result of his work-related injury. Dr. Whitfield acknowledged that Mr. McKinney likely had some degree of preexisting cartilage degeneration but stated that Mr. McKinney had no symptoms prior to the compensable injury. Therefore, the degenerative changes were not severe enough prior to the injury to cause symptoms. Dr. Whitfield opined that had the workplace injury not occurred, Mr. McKinney's right knee would have remained asymptomatic for some time. The work-related injury caused a significant progression of Mr. McKinney's cartilage damage, causing loose body formation and pain.

In a May 20, 2019, Record Review, Ronald Fadel, M.D., opined that Dr. Whitfield's surgical observations clearly describe degenerative meniscal tears and extensive preexisting degenerative articular cartilaginous disease that was electively treated at the time of the meniscectomy. Dr. Fadel stated that Mr. McKinney had loose bodies prior to the work injury, and it is often the case that undetected lose bodies remain in the knee after surgery and cause pain. He stated that any treatment for degenerative joint disease would be aimed at treating a preexisting condition.

On August 15, 2019, the Office of Judges affirmed the claims administrator's decisions granting temporary total disability benefits from November 2, 2017, through January 10, 2018, and denying the addition of right knee osteoarthritis and right knee medial meniscus tear to the claim. The Office of Judges determined that a preponderance of the evidence shows Mr. McKinney developed right knee osteoarthritis and a right knee meniscus tear as a result of degenerative changes, not the compensable injury. Pursuant to *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), a noncompensable, preexisting condition is not compensable merely because it was aggravated by a compensable injury. If such an aggravation results in a discrete new injury, that new injury may be held compensable. Dr. Whitfield, who requested the inclusion of additional conditions to the claim, noted that he reviewed Mr. McKinney's November 1, 2017, x-rays, and he found degenerative changes, osteophytes in the patella pole, and small osteophytes in the lateral and medial compartments. An MRI taken less than two months after the compensable injury showed mild medial compartment degenerative changes and moderate patellofemoral compartment degenerative changes with cartilage loss. Further, after Mr. McKinney's right knee surgery, Dr. Whitfield diagnosed Grade IV chondral loss of the trochlea groove and Grade III chondral changes at the medial tibial plateau and medial femoral condyle with 50% cartilage thickness loss. Dr. Whitfield's surgical note indicated significant arthritis in the knee only three months after the compensable injury. Based on the above evidence, the Office of Judges concluded that osteoarthritis should not be added to the claim because it preexisted the compensable injury.

The Office of Judges also found that Mr. McKinney's right knee medial meniscus tear should not be added to the claim. It determined that the evidence shows the tear was degenerative and predated the compensable injury. In his January 10, 2018, surgical note, Dr. Whitfield stated that Mr. McKinney had a right knee degenerative tear of the medial meniscus. He later opined on

5

November 30, 2018, that the tear was the result of the compensable injury. The Office of Judges found that Dr. Whitfield's diagnosis made immediately after he performed surgery on Mr. McKinney's knee was more reliable than his later opinion.

Regarding temporary total disability benefits, the Office of Judges noted that the claims administrator granted benefits until January 10, 2018, the date of Mr. McKinney's right knee surgery. During surgery Dr. Whitfield diagnosed a degenerative medial meniscus tear and cartilage loss associated with preexisting arthritis. The conditions found during surgery, and the conditions for which Mr. McKinney was later treated, preexisted the compensable injury and are not compensable. The claim is compensable for a right knee sprain only. The duration of care for a sprain is no more than six weeks. The Office of Judges therefore found that Mr. McKinney was not being treated for a compensable injury after his January 10, 2018, right knee surgery and temporary total disability benefits beyond that date were properly denied. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 24, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1, employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W.Va. 796, 172 S.E.2d 698 (1970). A preponderance of the evidence indicates Mr. McKinney sustained a right knee sprain in the course of and resulting from his employment. Mr. McKinney's right knee osteoarthritis and right knee medial meniscus tear are clearly not the result of the compensable injury and, in fact, preexisted the work-related injury. Further, West Virginia Code § 23-4-7a states that temporary total disability benefits will cease when the claimant has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. Temporary total disability benefits were properly terminated on January 10, 2018, because Mr. McKinney's inability to return to work beyond that date was due to noncompensable conditions. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison

Justice William R. Wooton

6